UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVE A. URIAS,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

No.  2:24-cv-3000 AC

**ORDER**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

## I.  PROCEDURAL BACKGROUND

On January 18, 2022, plaintiff filed an application for Disability Insurance Benefits (DIB/SSDI) under Title II of the Social Security Act (the Act), alleging disability beginning May

---

[1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

24, 2018 (the Alleged Onset Date or AOD).  Administrative Record ("AR") 165-167, 195-204.[2] The State agency responsible for evaluating disability claims on the Commissioner's behalf denied plaintiff's claim at the initial level on June 7, 2022, and upon reconsideration on September 19, 2022.  AR 59-77, 79-96.  Mr. Urias subsequently requested a hearing before an administrative law judge (ALJ), which held before ALJ Serena Hong on August 17, 2023, at which plaintiff and his counsel appeared by video teleconference, and vocational expert (VE) Cherise Powell testified via telephone.  AR 31-58.  The ALJ issued an unfavorable decision denying plaintiff's claims on November 24, 2023.  AR 14-30.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the request for review on August 26, 2024.  AR 1-6.  Plaintiff timely filed this action on October 31, 2024.  ECF No. 1. The parties consented to the Magistrate Judge for all purposes.  ECF No. 6.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 18 (plaintiff's summary judgment motion), 24 (Commissioner's summary judgment motion), 25 (plaintiff's reply brief).

## II.  FACTUAL BACKGROUND

Plaintiff suffered an on-the-job fall injury on December 27, 2016.  AR 167, 311.  Plaintiff also suffered injuries in a motor vehicle accident in August 2018.  AR 617.  Plaintiff alleged disability due to "Back injury; neck pain; spinal myelomalacia; pain; numbness; aches; depression; sadness; feeling helpless; insomnia."  AR 60.  At the time of filing, plaintiff was 45 years old, making him a "younger person" under the regulations.  AR 59.[3]  Plaintiff has a high school education.  AR 38.  Plaintiff has work history as a carpenter and as a day labor supervisor. AR 52.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

---

[2]  The AR is electronically filed at ECF No. 15.
[3]  See 20 C.F.R. § 404.1563(c) ("younger person").

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Commissioner, 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

3

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

4

disabled"), 416.912(a) (same); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy."  <u>Hill v. Astrue</u>, 698 F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

V.  THE ALJ's DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. [Step 1] he claimant has not engaged in substantial gainful activity since May 24, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. [Step 2] The claimant has the following severe impairments: degenerative disc disease and obesity (20 CFR 404.1520(c)).

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, rope, or scaffolds, but can perform all other postural activities occasionally. The claimant can occasionally reach overhead with the right upper extremity. The claimant should avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

6. [Step 4]  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. [Step 5] The claimant was born [in] 1976 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)

8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and Residual Functional Capacity (RFC), there are jobs that exist in significant numbers in the National Economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

5

11.  The claimant has not been under a disability, as defined in the Social Security Act, from May 24, 2018, through the date of this decision 20 CFR 404.1520(g)).

AR 19-25.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 25.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) failing to provide specific, clear, and convincing reasons for discounting plaintiff's testimony regarding his physical dysfunction[4]; and (2) failing to address his diagnosed and undisputed carpal tunnel syndrome.  ECF No. 18 at 7.

A.      The ALJ Properly Evaluated Plaintiff's Subjective Testimony

The Ninth Circuit has described the process of evaluating an ALJ's review of subjective pain testimony as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996).  For the district court reviewing the ALJ's conclusions, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."  Smartt v.

---

[4]  Although plaintiff states that he is also challenging the ALJ's evaluation of plaintiff's mental dysfunction testimony, his briefing does not actually address any mental impairments. Accordingly, plaintiff has waived any contentions of error on this issue. See Carmickle, 533 F.3d at 1161 n.2 ("We do not address this finding because Carmickle failed to argue this issue with any specificity in his briefing."); Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (issue was waived where party made only a "bold assertion" of error with "little if any analysis to assist the court in evaluating its legal challenge").

Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole."  Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

Here, plaintiff testified at his hearing that he had significant physical limitations, including that he could stand for only about 15 to 20 minutes at a time, and would spend about two to three hours lying down during the day for about 30 minutes at a time.  AR 22, 42.  The ALJ noted that "claimant alleged to have significant pain in the back, neck, and shoulder area.  He alleged to have ongoing joint pain symptoms and mobility deficits on a consistent basis.  The claimant alleged to have difficulty with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using hands, and climbing stairs."  AR 22.  The ALJ discounted plaintiff's testimony regarding the severity of his symptoms on several grounds: that plaintiff largely received monitoring and conservative treatment, that medical findings were within normal limits, and that plaintiff's activities of daily living are incompatible with his pain and functional allegations.  AR 22-23.  These factors constitute legally sufficient reasons for discounting plaintiff's subjective complaints and his statements regarding the intensity, persistence, and limiting effects of his alleged symptoms.

First, the ALJ the appropriately found that plaintiff was able to perform various activities of daily living inconsistent with the disabling limitations he alleged.  AR 22-23; 20 C.F.R.  § 404.1529(c)(3) (when evaluating symptoms, ALJ may consider activities of daily living).  To support this finding, the ALJ cited evidence showing that plaintiff could perform personal care activities, prepare meals, do household chores, go for walks, drive a car, take public transportation, shop for groceries, run errands, attend appointments, socialize with others, and take care of children and pets.  AR 22-23, citing AR 49-52, 214-20, 242-49, 1256, 1263; see also, e.g., AR 38-39 (coaching sports); AR 284 (playing basketball and walking for 30-60 minutes several times a week); AR 1265 (coaching sports and walking several times a week).  For example, despite alleging difficulty walking (AR 22, 213, 218), the medical record showed that plaintiff reported being able to walk for three miles every other day (AR 23, 1263).

The ALJ permissibly found that plaintiff was able to perform activities which undercut his claims of disabling pain and limitations.  See, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's testimony about daily activities, including taking care of personal needs, preparing easy meals, doing light housework and shopping for groceries, may be seen as inconsistent with the presence of a disabling condition).  Conflicts between a claimant's testimony and his activities of daily living may constitute clear and convincing reasons for rejecting the testimony.  Morgan v. Comm'r., 169 F.3d 595, 599-600 (9th Cir. 1999); Burch, 400 F.3d at 680-81.  Plaintiff does not point to evidence that undermines the ALJ's assessment of his activities of daily living, and the court's review of the record supports her assessment.

Second, the ALJ properly considered the objective medical evidence as one factor in discounting plaintiff's testimony.  AR 22-23; 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms …."); 20 C.F.R. § 404.1529(c)(4) (ALJ "will evaluate your statements in relation to the objective medical evidence and other evidence").  The ALJ acknowledged that imaging and diagnostic studies showed cervical spine degenerative changes and radiculopathy (AR 22-23, citing AR 325-31, 743, 1263, 1299), but pointed out that examinations also revealed many normal findings at odds with disabling symptoms or limitations, such as full (or nearly full) strength, a normal gait, negative straight leg raise (SLR) tests, no significant musculoskeletal or neurological deficits, and no acute distress.  AR 22-23, citing AR 282-83 (mild neck and right shoulder tenderness, normal range of motion in both shoulders, 4/5 strength in right shoulder, 5/5 strength in left upper extremity, intact sensation, and no distress); AR 291 (intact sensation and strength, no distress); AR 306 (lumbar tenderness but full range of motion, negative (normal) SLR test, normal muscle tone, 5/5 strength, normal gait, intact sensation, and no distress); AR 1266-67 (cervical and lumbar symptoms with range of motion but intact reflexes and sensation, and 4+/5 to 5/5 strength on manual muscle testing ("MMT")); AR 1300-01 (same, and normal SLR test); AR 1342-43 (normal gait, full range of motion in the neck, normal muscle bulk and tone in the upper extremities, negative SLR test, intact sensation and reflexes, no focal weakness, and no acute distress ("NAD")); see also, e.g., AR 429-30 (reduced

range of motion in the lumbar spine and reduced sensation but normal gait, normal reflexes, no assistive device, negative SLR test, normal muscle bulk and tone in all extremities, and 5/5 strength); AR 887-88 (same)).

The ALJ's reliance on the medical evidence as one reason among others to discount plaintiff's subjective symptom testimony is proper. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Neither the fact that two reasonable minds could reach different conclusions based on the record, nor the existence of an alternative interpretation of the evidence, means that the ALJ erred. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The court finds no error here.

Third, the ALJ observed that plaintiff received conservative pain management treatment, not treatment commensurate with a disabling impairment. AR 23. See 20 C.F.R. § 404.1529(c)(3) (when evaluating symptoms, ALJ appropriately considers claimant's treatment). For example, plaintiff was not recommended for surgery because physical therapy and daily routines were helping his pain. AR 48. Instead, he periodically attended physical therapy, where he was noted to be making progress. AR 23, citing AR 992-93 (plaintiff was feeling better, managing his symptoms with a home exercise program ("HEP"), and responding well to treatment); AR 1263 (plaintiff's exercises were going well and he was walking three miles every other day); AR 1299-1300 (plaintiff's symptoms were stable since his last physical therapy appointment five months earlier, and his examination was largely normal); AR 1342-43 (noting plaintiff attended physical therapy three times in the prior year, and his physical examination was normal)). Plaintiff also used muscle relaxants, cannabis products, and an electrotherapy device similar to a TENS unit. AR 44-45 (plaintiff treated symptoms with muscle relaxants, CBD oil, and an H-wave machine); AR 306 (plaintiff used ibuprofen, a muscle relaxant, and CBD oil); AR 1255 (plaintiff used ibuprofen, CBD, and THC)).

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).

Here, as discussed above, the ALJ reasonably considered that plaintiff's routine and conservative treatment was contrary to his claims of disabling pain. Smartt, 48 F.4th at 500 (ALJ appropriately found that overall conservative treatment undermined pain complaints, where claimant had surgery but then received physical therapy, used a neck brace and wheelchair temporarily, and took pain medication); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (favorable response to a conservative treatment plan, including physical therapy, anti-inflammatory medication, a TENS unit, and a lumbosacral corset, was a permissible basis for discounting testimony of disabling pain); Fertig v. Comm'r, 1:21-cv-01390-CDB, 2024 WL 4480191, at *8 (E.D. Cal. Oct. 11, 2024) (upholding ALJ finding that claimant's treatment, which consisted of naproxen, home exercise, physical therapy, and cervical traction, plus recommendations to use heat, acupuncture, and TENS unit, was conservative, noting she "was not prescribed severe pain medication, but instead, naproxen") (citing, e.g., Smartt, 53 F.4th at 500). Accordingly, the court finds no error.

### B. The ALJ Did Not Err Failing to Address Carpel Tunnel Syndrome

Plaintiff argues that the ALJ improperly failed to evaluate plaintiff's diagnosed carpal tunnel syndrome, which he alleges is an earlier diagnosis that carried through the relevant period. ECF No. 18 at 9-10, citing AR 720 (list of medical evidence with a notation of carpel tunnel syndrome dated January 17, 2017), 762 (letter from an insurance claims adjusted dated May 12, 2019, reciting medical history and stating "Right wrist: mild motor and mild sensory demyelinating median mononeuropathy, reasonably consistent with carpal tunnel syndrome of the same degree. Left wrist: borderline motor and mild sensory demyelinating median mononeuropathy, borderline consistent with carpel tunnel syndrome of the same degree.). Plaintiff acknowledges that though he testified to difficulties with his hands, he also stated that he hadn't had any treatment because it was "not severe enough" for treatment. AR 43-44. Plaintiff argues that the ALJ improperly fails to mention carpal tunnel syndrome in the decision, and while she did acknowledge that plaintiff reported difficulty using his hands in his function report and testimony, and that he made similar reports to medical providers about tinging in his hands, she improperly ascribed his hand problems to his obesity. AR 22, 23.

There is no merit to this argument.  First, plaintiff relies on records that significantly predated his alleged disability onset date of May 24, 2018.  AR 762 (Jan. 2016), AR 720 (Jan. 2017), AR 724 (Apr. 2017), AR 315 (May 2017), AR 311 (Jun. 2017)).  He does not cite any medical evidence from the period relevant to his claim that could support the finding of CTS or that he had any functional limitations from CTS.  Indeed, as plaintiff admits in his brief, he himself said at the administrative hearing that his CTS was not severe enough to require any treatment.  AR 42-44, 196.  Plaintiff has failed to show that the ALJ erred, much less committed harmful error, regarding his alleged CTS.  See Carmickle, 533 F.3d at 1164-65 (ALJ did not err "by not classifying [the claimant's] carpal tunnel syndrome as a 'severe' impairment at step two" where claimant reported that his symptoms improved before the alleged onset date and "the medical record does not establish any work-related limitations as a result of this impairment").  The court finds no error.

VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24), is GRANTED;

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: May 4, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE